UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

JAMES SCOTT MURPHY,

    Plaintiff,

v.              604CV050

JIMMY H. KENNEDY,

    Defendant.

## ORDER

### I. INTRODUCTION

This 42 U.S.C. § 1983 case has two layers. The top layer bears a first-impression issue that arose after this Court granted leave to inmate James Scott Murphy to file this case *in forma pauperis* (IFP) under 28 U.S.C. § 1915.[1] The plaintiff has since paid the fee over time. However, after the Court granted him IFP defendant Jimmy H. Kennedy moved the Magistrate Judge (MJ) to determine that plaintiff is a "three-striker."[2] Defendant urges



the Court to keep plaintiff's fee as a sanction for his failure to candidly inform the Court of his three strikes. Doc. # 16 at 2.

The bottom layer -- the underlying merits here -- presents an issue that will be mooted if the Court resolves the top-layer issue against the plaintiff: Whether Georgia must assist him (by furnishing him with legal materials or a reasonable substitute) in exercising his constitutional right of access to the courts when he collaterally challenges his *Georgia* conviction while incarcerated in *Missouri*.

### II. BACKGROUND

#### A. The Underlying Lawsuit

While incarcerated in Missouri, Murphy moved this Court for leave to IFP-sue Kennedy, a Georgia prison librarian who refused Murphy's request for legal materials needed to challenge his Georgia conviction. Doc. # 1. Murphy's underlying issue, then, is whether Georgia must, while he remains in Missouri, provide him with legal materials (*i.e.*, copies of Georgia cases, statutes, etc., not available to him in his Missouri institution) or a reasonable substitute.

---

[1] Inmate plaintiffs who qualify for IFP status are granted permission to file a lawsuit and pay the Court's $250 filing fee under the installment-payment plan set forth in § 1915(b)(1). *See, e.g., Fuller v. Myers*, 123 Fed.Appx. 365, 357 (10th Cir. 2005). This contrasts with § 1915 as it existed prior to its 1996 amendment by Congress in the Prison Litigation Reform Act (PLRA), Pub.L. No. 104-134, 110 Stat. 1321, when indigent litigants could convince a court to waive the fee in part or in whole. *See Cuoco v. U.S. Bureau of Prisons*, 328 F.Supp.2d 463, 468 n. 3 (S.D.N.Y. 2004).

[2] Under § 1915(g), an inmate may not bring a civil action IFP "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." *Id.* Those prior actions are commonly referenced as "three strikes." "Three-strike" inmates cannot proceed IFP, but must instead pay the full filing fee. *Id.*

To that end, a dismissal for lying on an IFP affidavit (used by prisoners in applying to courts for leave to proceed IFP) about prior lawsuits "is precisely the type of strike that Congress envisioned when drafting section 1915(g)." *Rivera v. Allin*, 144 F.3d 719, 731 (11th Cir.1998); 168 A.L.R. Fed. 433. And "[d]ismissal of a case with prejudice is appropriate when an applicant misrepresents [his] financial arrangements in bad faith to obtain IFP status." *Cuoco*, 328 F.Supp.2d at 468.

Kennedy does not dispute that Murphy's right of access to the courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law...." 60 AM.JUR.2D *Penal and Correctional Institutions* § 68 (May 2004); 98 A.L.R.5TH 445.[3] That right is "limited to appeals from criminal convictions, petitions for habeas corpus, and civil rights actions. *Lewis v. Casey*, 518 U.S. 343, 354, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)." *Hoffenberg v. Federal Bureau of Prisons*, 2004 WL 2203479 at * 1 (D.Mass. 9/14/04) (unpublished); *Hannon v. Allen*, 241 F.Supp.2d 71, 74 (D.Mass. 2003).

### B. Kennedy's Dismissal Motion

The Magistrate Judge (MJ) granted Murphy leave to file his case IFP. Doc. ## 5, 11. Kennedy responded by moving to dismiss because Murphy is a § 1915(g) "three-striker." Doc. # 13. And on the underlying issue, he argued that Murphy seeks more than what the law entitles him. Doc. # 14 at 3-5.

Murphy initially responded that Kennedy's motion was untimely; the Court had already granted him IFP; and by that point he had already paid half of the Court's filing fee. Doc. # 15 at 1-2. And, he maintained, inmates cannot realistically exercise their access-to-court right without a law library or suitable alternative. *Id.* at 3-5; *see also* doc. # 18 (Murphy's subsequent letter[4] emphasizing that he has now paid the full filing fee); # 19 (Kennedy insisting that Murphy misled the Court and should still be § 1915(g)-barred); # 20 (Murphy's reply letter).

### C. The MJ's First Report and Recommendation (R&R)

Having considered the above, the MJ initially recommended that this Court grant Kennedy's dismissal motion. Doc. # 22. He cited, as three "strikes," cases Murphy unsuccessfully litigated during the 1990-94 period, then concluded that this case is controlled by *Dupree v. Palmer*, 284 F.3d 1234 (11th Cir. 2002). Under *Dupree*, district courts must deny three-strikers IFP *and* dismiss their complaints without prejudice. "The prisoner cannot simply pay the filing fee after being denied [IFP] status. He must pay the filing fee *at the time he initiates* the suit." *Id.* at 1236 (emphasis added). Hence, an IFP-denied, three-striker inmate must file anew.

The MJ also cited Murphy's failure to pay the full fee. Doc. # 22 at 6 ("Plaintiff has paid

---

[3] *See Rich v. Zitnay*, 644 F.2d 41, 43 n. 1 (1st Cir. 1981) (Maine corrections authorities, who transferred prisoners to federal prison at Leavenworth, Kansas after determining that prisoners were security risks, remained responsible for research and legal assistance accouterments to which prisoners were entitled for purposes of seeking postconviction relief in Maine); *Clayton v. Tansy*, 26 F.3d 980, 982 (10th Cir. 1993) ("[T]he general rule imposes upon the sending state authorities the responsibility for ensuring their prisoners incarcerated in sister state facilities are afforded access to state courts").

[4] Letters are not welcome in this Court. Motions, briefs, etc., get filed; letters get lost. The law places the burden upon litigants, not judges, to create their own record by filing record materials -- including legal arguments best presented in a *motion or brief* -- directly with the Clerk of Court. *See In re Unsolicited Letters to Federal Judges*, 120 F.Supp.2d 1073 (S.D.Ga. 2000); *see also* GA.CT.APP.R. 24 ("Parties are not permitted to file letter briefs nor letter cites"); *Thomas v. Schouten*, 210 Ga.App. 244, 244 (1993) (appeals court was barred from considering letter allegedly constituting request for hearing on summary judgment motion, as letter, which was attached to appellate brief, was not part of record and, thus, not properly before court).

a total of $126.00, not the full $150.00 filing fee").[5] Yet, he made no finding whether, as Kennedy contends, doc. # 19 at 2; # 26, Murphy knowingly misled the Court about the number of lawsuits he had filed prior to this case.

In Murphy's first objection to the MJ's initial R&R, he showed that he in fact has paid the full filing fee, so the MJ factually erred on that score. Doc. # 25 at 4 & attached prison account (appearing to show full payment). He also argued that *Dupree* is distinguishable because the court there § 1915(g)-dismissed an inmate's case without prejudice and *without* allowing him an opportunity to pay the filing fee. 284 F.3d at 1235. Here the MJ *granted* Murphy IFP and allowed him to pay the fee. In fact, Murphy claimed that he relied on that grant in ultimately paying it. He also insisted that his full payment moots this issue. *Id.* at 3-4.

Plaintiff also contended that any § 1915(g) "strikes" occurred over a decade ago. Doc. # 27 at 1-2; # 1 (Murphy's IFP attestation that he filed "two or three" cases "around 1987" and does not remember if any were dismissed as frivolous, malicious, or otherwise failed to state a claim"). And it is not, he argued, incredible to assert a fading memory of whether they constituted strikes. Also, the MJ did *not* find that he lied to this Court. Instead, the MJ erroneously applied *Dupree* despite the distinguishing factors noted above. *Id.*

Murphy additionally argued that it was the MJ's *duty* to search the records to uncover his prior cases. Doc. # 25 at 2.[6] Kennedy never responded to this contention, but instead labeled plaintiff "an abuser of the judicial system" who "should not be able to profit from his lying about that abuse." Doc. # 26 at 1. And he insisted that Murphy "blatantly lied in his IFP affidvavit when he stated that he had '2 or 3' prior lawsuits filed around 1987 when in reality he had filed over 20 prior lawsuits[,] most of which were dismissed as frivolous." Doc # 19 at 2;[7] *see also* doc. # 14 (attached "Pacer" documentation showing over a dozen "Murphy" cases); doc. # 27 (Murphy's explanation for why he did not disclose same).

### D. The MJ's Second R&R

Before this Court could pass on the first R&R, the MJ *sua sponte* reviewed the Objections and issued a second R&R. Doc. #

---

[5] The Court's filing fee increased from $150 to $250 on 2/7/05, *see* 28 U.S.C. § 1914, *after* Murphy filed this case.

[6] Murphy cited (doc. # 25 at 2) the *Rivera* court's dicta that "Courts must search records of the prisoner's prior federal cases to determine whether judicial officers 'on 3 or more prior occasions' entered orders of dismissals and, if so, whether the reason for the dismissals were frivolousness, maliciousness or failure to state a claim...." *Rivera*, 144 F.3d at 726. Once a prisoner is denied IFP on three-strike grounds, "it is the prisoner's burden to produce sufficient record evidence about 'prior occasions' to the appellate court" when appealing a denied IFP motion. *Id.* at 730.

[7] Kennedy would later scale this number down to "more than a dozen." Doc. # 30 at 1. The "PACER" report print-outs attached to his earlier filing, doc. # 14, list a lot of "James Murphy" cases, many of which Murphy says he does not recognize. Doc. # 27 at 1 ("Most of [those cases] were attacking my criminal conviction, and in numerous others I don't even recognizes [sic] who the defendants are"). The print-outs tend to support Kennedy's claim that at least three strikes pre-existed the IFP filing in this case. *See* doc. # 14 (attached dockets for, *inter alia, Murphy v. Soifer,* 4:92CV01188-SNL (E.D.Mo.) (dismissed as frivolous in 1992 and *aff'd* on appeal) (hence, 2 strikes); *Murphy v. St. Louis County,* 4:94CV01374-FRB (E.D.Mo.) (dismissed in 1994 and *aff'd* on appeal) (hence, 2 more strikes)). On the other hand, Kennedy does not rebut Murphy's claim that these strikes occurred a decade ago. Nor is there any indication that the MJ examined the individual dispositions in any detail.

3

29. In it he agreed that Murphy had paid the full filing fee. *Id.* at 1-2. "Accordingly," he concluded, "that portion of the [first R&R] recommending that [Kennedy's] motion to dismiss be granted is VACATED. Based on the finding that [Murphy] has paid the filing fee in full, it is my recommendation that [Kennedy's] Motion to Dismiss be denied." *Id.* at 2. Yet, the MJ did not mention Murphy's prior litigation history. Kennedy objects. Doc. # 30.

In his latest Objection, Kennedy again emphasizes that Murphy lied about the number of his prior strikes and his claimed forgetfulness should not be believed. Doc. # 30 at 1-2. The effect of the MJ's latest R&R, he contends, "will be that an inmate should try to get away with filing IFP even if he has three strikes and only if the Defendant or the Court is perceptive enough to catch the deception will the Plaintiff miraculously produce a filing fee." *Id.* at 2. And *Dupree*, Kennedy further contends, "is four corners on point." *Id.* at 3. Finally, he argues, the MJ seems to have forgotten about the merits portion of his dismissal motion. *Id.* at 4.

### III. ANALYSIS

*Dupree* is easily distinguishable because the inmate there was not permitted to pay the court's filing fee after the IFP-denial. Here the MJ granted Murphy leave to pay the filing fee in installments -- the only difference between an IFP grant and a denial -- and Murphy did just that. And it is not unreasonable of Murphy to claim reliance on the MJ's grant, unless of course he knowingly misled this Court.

Inmates who lie to this Court expose themselves to sanctions, including criminal perjury prosecutions. *See, e.g, Hatchet v. Nettles*, 201 F.3d 651, 654 (5th Cir. 2000). Yet, "[t]he threat of prosecution for perjury holds little terror for a person already in prison, as a perjury sentence would be deferred until the expiration of existing terms; for those serving life sentences without prospect of parole, no further penal sanction is possible." *Johnson v. Daley*, 339 F.3d 582, 592 (7th Cir. 2003).

Few cases discuss the prior-strikes issue in this way, and none that the Court has been able to locate illuminates a standard by which to guide a credibility determination. *See Still v. Crawford*, 105 Fed.Appx. 128, 129-30 (8th Cir. 2004) (District court's dismissal of state inmate's claim against corrections' employees, on basis that complaint contained intentional misrepresentations about prior litigation history, was an abuse of discretion; even if inmate's failure to indicate on form complaint that he had no prior cases was misleading and accurate, inmate simultaneously submitted an IFP application and litigation-history list which included a list of his prior 11 cases); *In re Epps*, 888 F2d 964, 968-69 (2nd Cir. 1989) (In the absence of any indication that prisoner is acting in bad faith in an attempt to conceal his prior litigation history from court, he should not be barred at the outset from filing a new lawsuit because of his failure to furnish every fact concerning prior lawsuits but, if further information concerning prior lawsuits is known to the litigant and is important to the consideration of his present lawsuit, he may be required to furnish those details upon pain of having his suit dismissed), cited in 32 AM.JUR.2D *Federal Courts* § 533 (May 2004); *Jones v. Warden of Stateville Correctional Center*, 918 F.Supp. 1142, 1151 (N.D.Ill. 1995) (pre-PLRA case) ("The *knowing* failure of a *pro se* litigant to admit to the filing of prior related complaints in answer to the questions on the civil rights complaint form is conduct subject to sanctions by the court") (emphasis added).

4

Whatever the standard, the Court must lean in favor of Murphy -- for the moment. First, whatever the *Rivera* court meant in directing *courts* to search the records for prior strikes (*see supra* note 6), it spoke of placing the burden on the inmate only after the district court denies his IFP motion. That court also was silent about who must make the *legal showing* (*i.e.*, that each "strike" case was specifically dismissed on one or more of the three grounds set forth in § 1915(g) and in question 1 of Murphy's IFP Affidavit form, doc. # 1).

Second, this Court's IFP form asked Murphy to recall, after nearly a decade, all lawsuits that were dismissed "because they were frivolous, malicious, or failed to state a claim upon which relief may be granted." Doc. # 1 at 1. Admittedly that may be difficult to recall after a decade in prison, and presumably with no access to old records (few would think an inmate would store litigation files in his cell over the decades).

More importantly, the IFP form also demands that inmate-plaintiffs recall whether each case was dismissed under those particular (*i.e.* § 1915(g)) grounds. Yet, "[b]ecause district courts do not issue these strikes one by one, in their orders of judgment, most prisoners would not be able to determine whether they have accumulated any strikes within the meaning of § 1915(g) prior to filing an application to proceed IFP." *Andrews v. King*, 398 F.3d 1113, 1119 n. 8 (9th Cir. 2005) (quotes and cite omitted).[8]

That is one of the reasons why the *Andrews* court placed the burden on government *defendants* to show the existence of prior strikes. Such a defendant must cite an actual case *and* show that its dismissal qualifies as a § 1915(g) "strike":

> Here, Andrews alleged that, as a prisoner, he cannot maintain files for each lawsuit that he has previously brought. Andrews also stated that he does not have access to PACER nor can he visit clerks' offices to obtain relevant orders. Moreover, because he is indigent, Andrews cannot order the relevant documents directly from the court or pay a third-party, such as a court filing service, to obtain the records for him. The State defendants do not dispute these facts. The State defendants, on the other hand, have greater access to prison administrative records, court documents and a host of knowledgeable attorneys who have represented the state prison officials in lawsuits brought by state prisoners.

---

[8] Even at that, subtle legal distinctions apply here. *See id.* at 1121-22 ("dismissals of actions brought while a plaintiff was in the custody of the INS do not count as "strikes" within the meaning of § 1915(g), so long as the detainee did not also face criminal charges"); *id.* at 1122 ("dismissed habeas petitions do not count as strikes under § 1915(g)"); *Snider v. Melindez*, 199 F.3d 108, 112 (2d Cir. 1999) ("we believe that 'fail[ure] to state a claim,' as used in Sections 1997e(c) and 1915(g) ... does not include failure to exhaust administrative remedies -- at least absent a finding that the failure to exhaust permanently bars the suit").

Courts thus provide detailed § 1915(g) notice to inmates before applying § 1915(g) to an inmate's previous dismissals. *See Snider*, 199 F.3d at 114-15 ("The entry of a strike was obviously harmful to Snider's interests, yet he was given no notice and opportunity to be heard as to why, even if the dismissal was warranted, a strike might not be. Snider was entitled to such notice and opportunity in relation to the strike determination...."); *Evans v. Ill. Dept. of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998) (prisoner must be placed "on notice as to what the district court considered when denying his request to proceed [IFP]" and given "an adequate opportunity to contest the district court's three-strike determination").

*Id.* at 1119-20; *see also id.* at 1120-21 (analyzing what constitutes a "strike"). Defendants like Kennedy here also must do more than merely attach a PACER print-out listing past, "dismissed" cases:

> [T]he State defendants attempted to meet their burden of production by pointing to the fact that Andrews had filed at least twenty-two prior cases that had been dismissed. This was insufficient to shift the burden to Andrews. Although the Magistrate Judge, relying on the PACER docket records, identified prior cases that potentially qualified as strikes under § 1915(g), only one case plainly qualified as a strike because the docket record showed that it was dismissed for failure to state a claim under Rule 12(b)(6). As for the four other cases, the Magistrate Judge determined that each one counted as a strike without considering the underlying court orders or making an independent assessment of whether the prior cases were frivolous or malicious or failed to state a claim.

*Id.* at 1121. These facts led the *Andrews* court to

> hold that, under the plain language of § 1915(g), the prior dismissals would qualify as strikes only if, after reviewing the orders dismissing those actions and other relevant information, the district court determined that they had been dismissed because they were frivolous, malicious or failed to state a claim. *See* § 1915(g). Under the circumstances, we must remand this case to the district court so it can make the necessary determinations on the basis of a more complete factual record.

*Id.*

Finally, the IFP statute explicitly specifies that the court shall dismiss a case if it determines that "the allegation of poverty is untrue...." 28 U.S.C. § 1915(e)(2)(A). Congress listed other grounds in that subsection, but misrepresenting the quantity and legal nature of prior lawsuits is not one of them. "Had Congress intended to require prisoners to affirmatively show that they were not subject to the three strikes provision, we have no doubt that it would have included that requirement in the list of requirements prisoners must address in order to obtain IFP status." *Andrews*, 398 F.3d at 1119.

This reasoning demonstrates that Kennedy has not met his initial burden of showing that Murphy in fact is a "three-striker." After he does so, the burden will shift to Murphy "to show that the prior dismissals did not qualify as strikes." *Id.* at 1120. In that resolution of this issue may well moot the court-access issue, it makes sense to defer on that issue and instead re-refer this case to the MJ for further proceedings consistent with this opinion.[9]

---

[9] Should Kennedy choose to pursue this particular issue, the parties shall address what should happen to Murphy's filing fee if the Court finds that he has "struck out." Section 1915 provides no guidance on handling a fully paid fee in this situation. Should Murphy forfeit it as a § 1915, and/or F.R.Civ.P. 11-based, sanction? *See Bankhead v. King*, 2003 WL 21529822 at * 4 (N.D.Tex. 7/7/03) (unpublished) ("Given the fact that Bankhead has deliberately misled this Court regarding his prior litigation history in an attempt to circumvent the "three strikes" bar to proceeding [IFP], this Court must now address the issue of whether Bankhead's prevarication warrants the imposition of sanctions pursuant to Rule 11...."). If not, should the Court refund the fee to Murphy or credit it toward any future litigation (*e.g.*, his appeal from any dismissal of this case)?

## IV. CONCLUSION

The Court *ADOPTS* the R&R (doc. # 29) but *RE-REFERS* this case to the Magistrate Judge for further proceedings consistent with this opinion.

This 16 day of May, 2005.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

# United States District Court
## Southern District of Georgia

James Scott Murphy )

vs ) CASE NUMBER CV604-50

Jimmy H. Kennedy ) DIVISION STATESBORO

The undersigned, a regularly appointed and qualified deputy in the office of the Clerk of this district, while conducting the business of the Court for said division, does hereby certify the following:

1. Pursuant to the instructions from the Court and in the performance of my official duties, I personally placed in the United States Mail a sealed envelope, and properly addressed to each of the persons, parties or attorneys named below; and

2. That the aforementioned enveloped contained a copy of the document dated 5/16/05 _____, which is part of the official record of this case.

Date of Mailing: 5/16/05

Date of Certificate [X] same date, or _____

Scott L. Poff, Clerk

By: WPrescott _____
Deputy Clerk

Name and Address

John C. Jones Sr. Asst. Atty. Gen 40 Capitol Sq. SW. Atlanta, Ga. 30334-1330
James Scott Murphy 158241 Potosi Correctional Center 11593 State Hwy o Mineral Point, Mo 63660
Devon Orland 40 Capitol Sq. SW. Atlanta, Ga. 30334

[ ] Copy placed in Minutes
[X] Copy given to Judge
[ ] Copy given to Magistrate